## RAILROADS v. RICHMOND.

A case will fall within the 25th section of the Judiciary Act where the record shows that on a suit on a contract the defendants set up that the contract had been rendered void and of no force and effect by provisions of the Constitution of the United States and of certain acts of Congress, and shows also that the decision of the highest court of the State was against the right, title, privilege, or exemption thus specially set up.

MOTION to dismiss a writ of error to the Supreme Court of Iowa, which had been sued out on the assumption that the case came within the third clause of the 25th section of the Judiciary Act. That act thus enacts:

"That a final judgment or decree in any suit, in the highest court of law or equity of a State in which a decision in the suit could be had,

"(1st.) Where is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States, and the decision is AGAINST their validity;

"(2d.) Or where is drawn in question the validity of a statute of or an authority exercised under any State, on the ground of their being repugnant to the Constitution, treaties, or laws of the United States, and the decision is IN FAVOR of such their validity;

"(3d.) Or where is drawn in question the construction of any clause of the Constitution, or of a treaty, or statute of, or commission held under the United States, and the decision is AGAINST the title, right, privilege, or exemption, specially set up or claimed by either party, under such clause of the said Constitution, treaty, statute, or commission,—

"May be re-examined and reversed or affirmed in the Supreme Court of the United States upon a writ of error."

The case was thus:

This statute being in force, the Sioux City and Dubuque Railroad, beginning on the Missouri, the western boundary of Iowa, runs eastwardly across the State till it reaches Dubuque on the Mississippi, its eastern boundary. On this road quantities of grain are carried from the West to Chicago and other eastern towns. Arriving at Dubuque, the grain, bound eastward, or as it was called "*through* grain," was formerly taken from the railcars, put on a ferry-boat, carried thus across the Mississippi to Dunlieth (a town in Illinois directly opposite Dubuque), and there put upon cars of the Illinois Central Railroad and sent forward, east. Dubuque was thus a point for transshipment. In this state of things the Sioux City and Dubuque Railroad made a contract with Richmond and another, owners of an elevator at Dubuque, beside the road and near the river, that they, the owners of this elevator, should have the handling of all the "through grain;" and that the railroad company would pay them a certain price per bushel for receiving and discharging it, and would pay also for storage of it when exceeding ten days.

With this contract in force Congress in 1866 passed two acts, one of June 15th,* entitled "An act to facilitate commercial, postal, and· military communications among the several States," which enacted :

"That every railroad company in the United States, &c., be, and is hereby, authorized to carry upon and over its road, boats, bridges, and ferries, all passengers, troops, government supplies, freight, and property on their way from any State to another State, and to receive compensation therefor, *and to connect with roads of other States so as to form continuous lines for the transportation of the same to the place of destination.*"

The other, an act of July 25th,† entitled "An act to authorize the construction of certain bridges, and establish them as post roads." This act provided for the construction of certain bridges across the Mississippi River, including one at Dubuque, and declared that they shall be

---

* 14 Stat. at Large, 66.          † Ib. 244.

"For the more perfect connection of any railroads that are or shall be constructed to the said river at or opposite said points, and that, when constructed, all trains of all roads terminating at said river, at or opposite said point, shall be allowed to cross said bridge," &c.

In pursuance of this second act a bridge was built over the river; and in virtue of the first one the two roads were connected by the Dubuque bridge, so as to form a continuous line of roads, and put under one management and control, that of the Illinois Central Railroad, which agreed to assume the contract about the elevator.

Neither road having, however, any further occasion to transfer at Dubuque anything passing over the road, the elevator was no longer used. The grain passed continuously on. Thereupon, Richmond, and the other owners of the elevator, brought suit against the companies, alleging that they, the companies, were

"Daily receiving through grain as aforesaid, and passing the same through Dubuque, without permitting the plaintiffs to have the handling of the same at their elevator as aforesaid, and without paying the plaintiffs therefor."

The petition asked for damages, and prayed for an injunction to restrain the companies from delivering grain otherwise than through their elevator.

The defendants denied every allegation in the petition, and averred that the plaintiffs had been paid in full for all of the grain which they were entitled to handle under and by virtue of the said contract.. They did not, however, plead specially the Constitution of the United States, nor the acts of Congress hereinbefore named, as a defence to the demand.

The case was heard in the Supreme Court of Iowa, where a final decree was rendered, giving the plaintiffs in the case $73,186 damages, and concluding thus:

"And it is further ordered, adjudged, and decreed that the claim of the said defendants, that the Constitution of the United States, and certain acts of the Congress of the United States,

one entitled, &c., approved July 25th, 1866, and another entitled, &c., and approved June 15th, 1866, renders void and of no force and effect the covenants sued on in this action by the said plaintiffs in the contract and supplemental contract, which are the subjects of this action, be and the same is hereby denied, and it is adjudged that the said Constitution and the said acts of Congress do not in any manner affect the validity or force and effect of either or any of said covenants, or of either of said contracts."

From this decree it was that the present writ was taken, under the assumption, as already stated, that the case came within the third clause of the 25th section of the Judiciary Act.

The motion to dismiss was made on the ground that " the record did not show a state of facts that made any act of Congress apply to the case."

*Mr. Platt Smith, in support of the motion:*

Although the acts authorize the connection of the tracks so as to form continuous lines of transportation to the place of destination; and though the tracks are connected and the lines formed, the acts do not say that the grain once loaded and on the line shall in no case change cars or break bulk short of the ultimate destination.

The contract provides that the owners of the elevator shall have the handling of all through grain, and shall have one cent per bushel for the service. The Supreme Court of Iowa says that they will not compel the railroad company to perform this contract specifically, but that they will give damages in lieu if the grain goes on the continuous line without breaking bulk, and the plaintiffs get judgment for the breach of contract. These acts do not in terms nor can they in spirit be stretched to reach the contracts.

*Mr. J. E. Wilson, contra:*

The final decree rendered by the Supreme Court of Iowa shows:

1. That a question was presented to that court, consid-

ered, and decided, involving the commercial power of Congress, and the construction of two acts of that department of the government, and the exemption set up by the defendants from liability to discharge the covenants, contained in the contracts sued on, because of the exercise of the said power in the passage of the acts named.

2. That the said court did construe the provisions of the Constitution conferring the said power, and did construe the said acts of Congress, and thereupon did adjudge "that said Constitution and said acts of Congress do not in any manner affect the validity or force and effect of either or any of said covenants, or either of said contracts."

3. That the several contracts, and the several covenants therein contained, were considered in their relations to the Constitution, and said several acts of Congress, and severally held to be valid and of force and effect, because of the construction given to the Constitution and acts by the said court; thereby denying the right of the defendants to carry grain passing from one State to another State without delivering the same to the plaintiffs, and denying the exemption claimed from the covenant of said contract to deliver said grain, and pay one cent a bushel therefor.

Certainly a Federal question is thus presented under the third clause of the 25th section.

The CHIEF JUSTICE delivered the opinion of the court.

The defendants in error move to dismiss the writ of error on the ground that the "record does not show a state of facts, that makes any act of Congress apply to the case." The record does show, however, that the present plaintiffs in error claimed in the State court, that contracts made with the defendants in error had been rendered void and of no force and effect by provisions of the Constitution of the United States, and of certain acts of Congress, approved June 15th, 1866, and July 25th, 1866, and also that the decision of the Supreme Court of Iowa, denied this claim. The motion to dismiss must, therefore, be

DENIED.